STATE of Missouri,
Plaintiff–Respondent,

v.

Richard BECK, Defendant–Appellant.

No. 51142.

Missouri Court of Appeals,
Eastern District,
Division Five.

Dec. 22, 1987.

Motion for Rehearing and/or Transfer
Denied Jan. 20, 1988.

Application to Transfer Denied
March 15, 1988.

Curtis C. Crawford, Alan G. Kimbrell, Rosecan and Kimbrell, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

CARL R. GAERTNER, Judge.

Defendant was convicted of possession of more than thirty-five grams of marijuana, in violation of section 195.020, RSMo., 1986, and sentenced as a persistent offender to ten years in prison. Defendant appeals this conviction, claiming that: (1) the trial court erred in allowing testimony concerning his passenger's possession of valium; (2) it was prosecutorial misconduct for the state, in closing argument, to comment on the absence and possible non-existence of the doctor who allegedly prescribed valium to defendant's passenger; (3) the trial court should have declared a mistrial when a prosecution witness testified that the marijuana was packed as if for sale; (4) the court erred in sentencing defendant as a persistent offender since one of the prior convictions mentioned in the information had been overturned. We reverse and remand for a new trial.

The facts surrounding the arrest are as follows. On January 13, 1985, two police officers observed defendant commit a traffic violation and attempted to apprehend him. Defendant stopped his car approximately seven blocks down the street in a convenience store lot; he claims that he did not commit a violation and that he did not know the police car was behind him. As officer Mesey approached the driver's side of the defendant's car, he called to his partner that the passenger, Mrs. Klocke, was attempting to swallow something. Officer Mesey then extracted defendant from the vehicle. At this time he observed two bags of marijuana partially hidden under the front seat of defendant's car and an open briefcase containing fourteen bags of marijuana in plain view behind the front seat. A search of defendant's person also revealed a box containing a pipe and a small amount of marijuana. Meanwhile, Officer Longworth pulled Mrs. Klocke from the vehicle and recovered some valium tablets from her. The state claims the pills were extracted from Mrs. Klocke's mouth; she claims they were in a prescription bottle in her purse.

Defendant was charged with possession of more than thirty five grams of marijuana and tried before a jury. The defense contended that the police officers planted the marijuana in defendant's car. In support of this contention, defendant and Mrs. Klocke both testified that after they were taken from the car and handcuffed, Officer Mesey removed the briefcase from the trunk of the police car and took it toward their automobile. Two independent witnesses, Denise Hampton and Nancy Moore, corroborated this testimony. Miss Moore, who had been using a public telephone at the side of the parking lot, described the arrest of the occupants of the automobile, the removal of the briefcase from the police car, and Officer Mesey's walk to defendant's car while carrying the briefcase. She stated that the officer "looked up at me and I was looking at him and he just hesitated for a minute and just shut the door of the car they were in and turned around and put the briefcase back in his trunk ..." Miss Moore did not know defendant but recognized Mrs. Klocke, with whom she had played softball when 9 or 10 years old. Mrs. Hampton described the incident in identical detail. She knew neither defendant nor Mrs. Klocke, but responded to defendant's newspaper ad seeking persons who had observed the incident.

The state devoted a significant amount of the trial to establishing that Mrs. Klocke had valium tablets in her possession. Defendant's first point on appeal is that the trial court erred in admitting the valium into evidence and in allowing a criminologist to testify the pills taken from Mrs. Klocke were valium. Defendant alleges that this evidence was irrelevant to the crime charged and that the introduction of the evidence prejudiced him by implying

"guilt by association," by allowing the jury to speculate that the defendant was guilty of an uncharged crime, and by improperly discrediting a defense witness.

In a valiant effort to save the conviction, the state argues the matter has not been preserved for appellate review. The initial contention, that the point relied on does not meet the requirements of Rule 30.06 (d), is patently without merit.[1] The state next argues the point was not preserved because of the failure to object at the earliest opportunity. The basis for this argument is that the defense made no objection when a police officer testified he seized pills from Mrs. Klocke and identified the pills as valium. The first objection came when the state attempted to introduce these pills as an exhibit and the objection was continued when the state's criminologist testified regarding his analysis of the pills. The state argues that by not objecting at the first mention of the pills, defendant has opened the door to any and all evidence relating to them. The fallacy of this argument is demonstrated by the subsequent argument in the state's brief. Addressing the merits, the state argues that the original evidence concerning the pills was properly admitted as evidence of circumstances surrounding the defendant's arrest. In other words, the state argues that defendant waived his objection to inadmissible evidence by failing to object to admissible evidence.

We reject the suggestion that a failure to object at the first mention of a subject of questionable relevance and possible prejudice precludes the right to appellate challenge on all further exploitation of the subject. The potential for manifest injustice resulting from such a rule is illustrated by the facts of this case.

 The testimony that Mrs. Klocke attempted to swallow pills as the officers approached the car was arguably proper as explanatory of the circumstances surrounding the arrest. *State v. Russell,* 602 S.W. 2d 465, 466 (Mo.App.1980). Although the officer's testimony that the pills were analyzed as valium was certainly subject to objection, both as to relevance and as incompetent hearsay, defense counsel did not object. However, immediately after this testimony when the state offered the pills in evidence as an exhibit, he did assert an objection which was overruled. He maintained his objection to the testimony of the criminologist regarding the analysis of the pills.

We find no fault in defense counsel's failure to object when Mrs. Klocke's valium was first mentioned. At that stage of the proceeding the evidence was relatively innocuous. Experienced trial lawyers studiously avoid the risk of irritating judge and jury by making constant nit-picking objections to non-damaging evidence. Counsel's forbearance can hardly be construed as an invitation to the prosecution to put Mrs. Klocke on trial, yet that is precisely what occurred. First, the state introduced Mrs. Klocke's valium as an exhibit in defendant's trial for possession of marijuana. A police officer repeatedly referred to her as a co-defendant, although he was forced to admit that the circuit attorney's office refused his request to issue an arrest warrant for possession of an illegal substance. Mrs. Klocke was challenged to produce a doctor's prescription for the valium. Finally, in closing argument, the state argued that the jury should draw an adverse inference because the defendant failed to produce Mrs. Klocke's doctor as a witness.

The developments are perhaps best described in the words of the trial judge at a side-bar conference regarding the defendant's objection to the criminologist's testi-

---

1. Defendant's first point relied on is as follows: The prosecutor injected evidence that defendant's passenger and witness possessed, and was arrested for possession of, a controlled substance, other than that charged, and the trial court erred in admitting said substance into evidence, and in permitting a criminalist to testify that it was valium, because it was evidence of another crime, irrelevant, and im-

material; defendant was prejudiced by the introduction of said evidence because: (1) it induced the jury to find "guilt by association"; (2) it allowed the jury to speculate that defendant was guilty of a crime he had not been charged with; and (3) it discredited an essential defense witness by showing that she was arrested for, and may have been guilty of, a crime that she had not been convicted of.

mony on the chemical analysis of the pills. "Well, I think it all should be kept out because we are trying it like the state is trying to pin the defendant based upon someone else's violation of the narcotic law and we will have to try her case." Nevertheless, stating "I think we have gone too far to backtrack now," the court overruled defendant's objection.

The nature of the substance Mrs. Klocke possessed and whether her possession was legal or illegal was utterly irrelevant to the existence of an open briefcase containing 14 bags of marijuana in the back seat of defendant's automobile. As stated in *State v. Beck*, 673 S.W.2d 122, 125 (Mo.App. 1984), "[t]he evidence could have no purpose other than to attempt to convince the jury of defendant's guilt because of his association with [Mrs. Klocke].... We are unable to find any basis upon which this questioning is justified and it was clearly prejudicial. For that reason the case must be reversed and remanded." Prosecutorial efforts to establish the guilt of a defendant by virtue of his association with another have consistently resulted in reversals. *See* e.g., *State v. Maddox*, 657 S.W.2d 719, 721 (Mo.App.1983) ("[t]he only purpose of such testimony was to convince a jury that defendant's association with his brother-in-law two and one-half months later, at a place several miles away, established his participation with Champers in the burglary for which he was on trial. It presented a classic case of attempting to prove guilt by association"); *State v. Clark*, 646 S.W.2d 409, 411 (Mo.App.1983) ("[t]he prosecutor cannot be allowed such liberties with the fundamental rule that a defendant is entitled to be tried on the merits of his own case, and not to be found guilty by association."); *State v. Diamond*, 532 S.W.2d 873, 875–76 (Mo.App.1976) (wherein reversal was required because evidence of an unrelated car theft by two friends of the defendant "could easily have led the jury to believe the defendant was guilty of the charge merely because of his association with the two other men, and thus establish defendant's 'guilt by association.' ")

The state attempts to justify the admission of the evidence by arguing that it elucidates defendant's purpose in not stopping immediately for the police. They claim defendant continued driving for several blocks while Mrs. Klocke attempted to swallow the valium. The shallowness of this argument is demonstrated by the fact that defendant drove into a parking lot and made a normal stop with, according to the state's evidence, an open briefcase full of marijuana in plain view in the back seat of his car. Moreover, the police testimony is that the attempt to swallow the pills commenced as the officers approached the stopped vehicle. Because the extensive trial-long concentration upon Mrs. Klocke's possession of valium had no logical tendency to prove defendant possessed marijuana, it should not have been permitted.

The prosecuting attorney's direct examination of a police officer injected an additional amount of prejudice that impacted upon defendant's entitlement to a fair trial. The questioning went as follows.

Q. Now based upon your experience as a police officer and having seen marijuana before, have you also seen the way it's packaged before?

A. Yes, sir.

Q. Based upon your experience, was the marijuana in that briefcase packed in any particular way?

A. Yes, sir. It was packed in the form that it is commonly packed for the purpose of selling marijuana.

MR. CRAWFORD: Your Honor, I'll object to that. He doesn't qualify as an expert on his experience. He's testifying as a sale here. That's another crime and I ask that the jury be instructed to disregard that and a mistrial be declared.

THE COURT: Mistrial is denied. The remark of the witness as to the packaging in that fashion as being used for sale should be disregarded by the jury.

Q. (By Mr. Warzycki) A package of marijuana so packaged as you say it is in that particular briefcase, is that known by any street name?

A. Yes, sir, it is known as a lid.

The state makes no attempt to justify this blatantly improper inference that

defendant was guilty of an uncharged crime. On the contrary, the state is content to argue that the trial court's direction to disregard the remark about packaging for sale magically erased the prejudicial effect of this testimony and that the error was harmless in light of the "overwhelming evidence" of defendant's guilt.

To classify the evidence of defendant's guilt as "overwhelming" is an example of extravagant exaggeration. A jury may believe the testimony of two police officers that defendant and his passenger, neither of whom is unacquainted with the criminal justice system, were driving in a car containing 14 bags of marijuana in plain view. Similarly, the jury may reject the testimony of defendant, his passenger and two individuals, who had no acquaintance or connection with the defendant before the incident, all describing a "planting" of the contraband. However, considering the evidence in its entirety, it can hardly be called "overwhelming." We cannot conclude that, in deciding which of the two diametrically opposite versions was true, the jury was unaffected by the inference that defendant was a seller, not a mere user, of marijuana. We may not declare error in the admission of evidence in a criminal trial harmless unless we find it to be so "without question," *State v. DeGraffenreid*, 477 S.W.2d 57, 64 (Mo.banc 1972) and "beyond a reasonable doubt," *State v. Johnson*, 714 S.W.2d 886, 890 (Mo.App. 1986). We can make no such finding in this case, especially in light of the prosecutor's exploitation of the prejudicial inference at the conclusion of his closing argument: "[We] are not dealing here with a kid, with a couple of joints in his pocket. We are dealing with a guy with sixteen bags of marijuana. We are dealing with a pro...."

The assessment of the prejudicial impact of erroneously admitted evidence and gauging the efficacy of an instruction to disregard are intertwined. An appellate court must make such evaluations on the basis of the entire record in each case. Here, although we have not been furnished with a transcript of the voir dire examination, the prosecutor in his closing argument referred to the fact that many of the jurors had expressed concern over an arrest for possession of a small amount of marijuana. His deliberate injection of an inference that defendant was a seller rather than a user of marijuana takes on greater import when viewed in the light of the predispositions expressed by some jurors.

Furthermore, above and beyond the evaluation of improper evidence upon the outcome of a particular case, we cannot ignore our responsibility for maintaining the integrity of our judicial system as the guarantor of a fair trial to all accused persons. We are considering not the inadvertent, volunteered statement of a witness. Instead we have an experienced prosecutor deliberately and calculatingly eliciting testimony that the defendant was guilty of a crime more serious and more inflammatory than the charged offense. The principle laid down by our Supreme Court 35 years ago in *State v. Allen*, 251 S.W.2d 659, 662, 363 Mo. 467, 473 (1952), continues to be a fundamental rule of due process today.

In the trial of a criminal case, the circuit attorney occupies a quasi-judicial position. While it is his duty vigorously and fearlessly to prosecute in behalf of the State, yet he is also chargeable with the duty to see that the defendant gets a fair trial and he must not knowingly prejudice the right of the defendant to a fair trial by injecting into the case prejudicial and incompetent matters.

. . . .

However, it makes no difference how regular trial proceedings are or how strenuously the trial court may strive to keep them regular or to cure error committed, yet, if prejudice finds its way into the verdict, the verdict cannot stand.

. . . .

However guilty any defendant may be, the law of this State requires that he shall be punished only after having been accorded a fair trial. This, we are convinced, the defendant in this case did not have.

 A prosecutor's interrogation of a witness which deliberately elicits "designedly and manifestly prejudicial" responses is "plainly an infringement of a fair trial for which the only remedy is a new trial." *State v. Dunn,* 577 S.W.2d 649, 653 (Mo.banc 1979), quoting from *State v. Taylor,* 473 S.W.2d 385, 388 (Mo. 1971).

Having concluded that defendant was deprived of a fair trial by reason of the prosecutor's purposeful injection of irrelevant and prejudicial evidence, we need not address defendant's contention of prosecutorial misconduct in final argument. This offense is not likely to recur on retrial. Similarly, the error in sentencing defendant as a persistent offender, conceded by the state, will undoubtedly be corrected before a second trial.

The judgment is reversed and the cause is remanded for a new trial.

SATZ, C.J., and SIMEONE, Senior Judge, concur.